UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cr-00217-RJC-DCK

| | | |
|---|---|---|
| USA | ) | |
| | ) | <u>ORDER</u> |
| vs. | ) | |
| | ) | |
| ALVIN JAKELYN WILLIAMS | ) | |

**THIS MATTER** is before the Court upon motion of the defendant pro se for compassionate release or home confinement based on the COVID-19 pandemic under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, and the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020, (Doc. No. 76), the government's response, (Doc. No. 79), and related pleadings.

I.   BACKGROUND

The defendant pled guilty to two counts of possessing cocaine base with intent to distribute, committed after a prior felony drug offense conviction. (Doc. No. 58: Judgment at 1). The Court departed upward from the advisory guideline range to 120 months' imprisonment on each count concurrently based on the defendant's unrelenting criminal activity over three decades. (Doc. No. 68: Sent. Hr'g Tr. at 39-40). The sentence was not disturbed on appeal. (Doc. No. 69: Opinion). With good time credit, his projected release date is March 25, 2023. (Doc. No. 79: Response at 6).

The parties agree that the defendant sought a sentence reduction under § 3582(c)(1)(A) from the warden of his institution on March 23, 2020. (Doc. No. 76:

Motion at 1; Doc. No. 79: Response at 6). When he did not receive a response within 30 days, the defendant filed the instant motion.[1] (Id.). Accordingly, this matter is ripe for decision.[2]

II. DISCUSSION

Ordinarily, a court may not modify a sentence once it is imposed. 18 U.S.C. § 3582(c). Section § 3582(c)(1)(A)(i) provides an exception that allows a court to reduce a sentence, after consideration of the factors in § 3553(a), upon finding that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Guidelines Manual contains the Commission's policy statement, promulgated under statutory authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[3] 28 U.S.C. § 994(t), USSG §1B1.13, comment. (backg'd). As the movant, the defendant bears the

---

[1] The warden denied the request on May 27, 2020. (Doc. No. 79: Response at 6). The Bureau of Prisons (BOP) also denied the defendant's request for home confinement based on his High Risk Recidivism level. (Doc. No. 79-2).

[2] Section 603(b) of the First Step Act amended § 3582(c)(1)(A), which previously only allowed a court to reduce a term of imprisonment on motion of the BOP Director. Now a court may entertain a motion filed by a defendant: (1) after full exhaustion of all administrative rights to appeal a failure of the BOP to bring a motion on the inmate's behalf; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the facility, whichever is earlier. Pub. L. No. 115-391, 132 Stat. 5194, 5239.

[3] The statute further provides, "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

burden of proving his suitability for a § 3582 sentence reduction. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013).

    A.    Dangerousness

One of the criteria to be applied is that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).[4] USSG §1B1.13(2), comment. (n.1). The defendant states that he is a non-violent offender who has rehabilitated himself through programs, resulting in being infraction free during his incarceration. (Doc. No. 81: Letter at 2; Doc. No. 82: Reply at 7-8). The government points to the defendant's criminal history from age 15 to

---

[4] A determination of dangerousness takes into account:

    (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    (2)    the weight of the evidence against the person;

    (3)    the history and characteristics of the person, including—
        (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

36, which involves felony convictions for assault with a deadly weapon inflicting serious injury and discharge of a weapon into an occupied dwelling. (Doc. No. 79: Response at 5). Additionally, he was on state post-release supervision for possession with intent to sell or deliver marijuana, breaking and entering, and resisting a public officer when he committed the offenses for which he was sentenced in this case. (Id.).

Considering information in the Presentence Report, (Doc. No. 26), relating to the factors in § 3142(g), the instant offenses involved sales of cocaine base to a confidential informant on two separate occasions. 18 U.S.C. § 3142(g)(1). The transactions were recorded; thus, the weight of the evidence against the defendant was strong. 18 U.S.C. § 3142(g)(2). His criminal history includes the dangerous offenses noted above where he fired a handgun into a house occupied by three people, seriously injuring one of them. 18 U.S.C. § 3142(g)(3)(A). Additionally, his record shows a string of drug possession and other offenses where he was repeatedly placed on probation and committed new crimes while under supervision. (Doc. No. 68: Sent. Hr'g Tr. 38-39). Among those offenses are two convictions for possession with intent to sell or deliver marijuana, one of which he was on post-release supervision when he sold cocaine base to the confidential informant. 18 U.S.C. § 3142(g)(3)(B).

At sentencing, the Court found that the defendant was not a career offender under the guidelines based on finding North Carolina's assault with a deadly weapon inflicting serious injury under North Carolina is not a "crime of violence"

using the categorical approach. (Doc. No. 68: Sent. Hr'g Tr. at 22-23). Even so, the Court was appalled by the level of violence and recklessness of the defendant's conduct, which was followed by an intense criminal livelihood. (Id. at 25, 38). Given the defendant's 24 criminal history points, four probation revocations, and numerous convictions that did not score points, the Court found that his most serious criminal history category of VI understated the threat that his lifetime of criminal conduct has caused other citizens and understated the likelihood that he would engage in further criminal conduct. (Id. at 38). Thus, the danger to any other person or the community that would be posed by the defendant's release is serious. 18 U.S.C. § 3142(g)(4).

The Court appreciates the defendant's efforts to rehabilitate himself through completing educational programs and complying with regulations during his nearly six years in a controlled environment and the risk that COVID-19 poses to those in custody. However, the Court is not persuaded that the defendant would not pose a danger to the community upon his release because his recent performance is not sufficient to mitigate the threat shown by over twenty years of intense criminal activity when he was not in a controlled environment. The defendant's release would be inconsistent with the Sentencing Commission's policy statement and inconsistent with the need for the sentence to protect the public from further crimes of the defendant; therefore, the Court will decline to exercise its discretion to reduce his sentence. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A); USSG §1B1.13(2), (3), comment. (n.1).

B. Home Confinement

Alternatively, the defendant requests modification of his sentence to home confinement under the CARES Act. (Doc. No. 76: Motion at 1-2, 5). The government rightly asserts that the Court has no authority to order the defendant into home confinement. (Doc. No. 79: Response at 13).

Title 18, United States Code, Section 3624(c) allows the BOP to place a prisoner in pre-release custody under conditions, including home confinement, for the last portion of a sentence in preparation for re-entry into the community. The Second Chance Act of 2007, among other things, expanded the allowable time period for pre-release custody from six to twelve months, but limits the time in home confinement to six months. Pub. L. No. 110 199, § 251, 122 Stat. 657, 692-93 (2008). The Act clearly states that it does not alter the BOP's authority to designate the place of the prisoner's imprisonment under 18 U.S.C. § 3621. Id. The First Step Act of 2018, among other things, amended § 3624(c) by adding a sentence directing the BOP to place qualifying prisoners in home confinement for the maximum amount of time permitted. Pub. L. 115-135, § 602, 132 Stat. 5194, 5238.

In response to the COVID-19 pandemic, the CARES Act became law on March 27, 2020. Pub. L. 116-136, 134 Stat 281. Section 12003(b)(2) of the Act gives the BOP Director authority to lengthen the maximum amount of time a prisoner may be placed in home confinement under § 3624(c)(2) during the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. On April 3, 2020, the Attorney

General issued a memorandum to the BOP Director making that finding and directing the immediate processing of suitable candidates for home confinement. However, nothing in the CARES Act gives the Court a role in determining those candidates; only the BOP has the statutory authority to make the necessary assessment of whether to transfer the defendant to home confinement.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the defendant's motion, (Doc. No. 76), is **DENIED**.

The Clerk is directed to certify copies of this order to the defendant and the United States Attorney.

Signed: July 6, 2020

Robert J. Conrad, Jr.
United States District Judge